JAMES TAYLOR, APPELLANT, *vs.* NICHOLAS LONGWORTH AND THO-
MAS D. CARNEAL, APPELLEES.

Specific performance of a contract by T., for the sale by him of a lot of ground in the city
of Cincinnati, was asked, by a bill filed in the Circuit Court for the District of Ohio, by
L. The complainant in the bill had purchased the lot, and had paid according to the
contract, the proportion of the purchase money payable to T. By the contract, a deed,
with a general warranty, was to have been given by the vendor within three months, on
which a mortgage for the balance of the purchase money was to have been executed by
the purchaser. This deed was never given or offered. The purchaser went into pos-
session of the lot, improved it by building valuable stores upon it, and sold a part of it
A subsequent agreement was made with the vendor, as to the rate of interest to be paid
on the balance of the purchase money. The purchase was made in 1814, and the inte-
rest, as agreed upon, was regularly paid until 1822, when it was withheld. In 1822,
the vendor instituted an action of ejectment for the recovery of the property, and he ob-
tained possession of the same in 1824. In 1819, the purchaser was informed that one
Chambers and wife had a claim on the lot, which was deemed valid by counsel; and in
1823, a suit for the recovery of the lot was instituted by Chambers and wife against
T. L. and others, which was depending until after 1829. In 1825, this bill was filed,
claiming from T. a conveyance of the property under the contract of 1814, on the pay-
ment of the balance of the purchase money and interest. The Circuit Court decreed a
conveyance; and the decree was affirmed by the Supreme Court.
After the filing of the original bill, amended bill, and answers, the Circuit Court considered
that C., who held a part of the lot purchased by L., should be made a party complainant;
and he came in and submitted to such decree as might be made between the original par-
ties. Held, that this was regular.
There is no doubt that time may be of the essence of a contract for the sale of property.
It may be made so by the express stipulations of the parties, or it may arise by implica-
tion from the very nature of the property, or the avowed objects of the seller or the pur-
chaser. And even when time is not thus, either expressly or impliedly, of the essence of
the contract, if the party seeking a specific performance has been guilty of gross laches,
or has been inexcusably negligent in performing the contract on his part, or if there has,
in the intermediate periods, been a material change in circumstances, affecting the rights,
interests, or obligations of the parties, in all such cases, Courts of Equity will refuse to
decree any specific performance, upon the plain ground that it would be inequitable and
unjust. But, except under circumstances of this sort, or of an analogous nature, time is
not treated by Courts of Equity as if the essence of the contract; and relief will be given
to the party who seeks it, if he has not been grossly negligent, and comes within a rea-
sonable time, although he has not complied with the strict terms of the contract. But
in all such cases, the Court expects the party to make out a case free from all doubt, and
to show that the relief which he asks is, under all the circumstances, equitable; and to
account in a reasonable manner for his delay and apparent omission of duty.
The rule that the purchaser of property shall prepare and tender a deed of conveyance of
the property to the vendor, to be executed by him; although prevailing in England, does
not seem to have been adopted in some of the states of the United States. In Ohio the
rule does not prevail. The local practice ought certainly to prevail, and to constitute the
proper guide in the interpretation of the terms of a contract.

ON appeal from the Circuit Court of the United States for the
District of Ohio.

The appellee, Nicholas Longworth, brought a suit, by a bill in
the Circuit Court of Ohio, for a specific performance of a contract
made with James Taylor, for the sale, by Taylor to him, of a lot of
ground in the city of Cincinnati. Afterwards, Thomas D. Carneal

was made a party to the proceedings. The Circuit Court made a decree in favour of the complainants; and the defendant, James Taylor, prosecuted this appeal.

The facts of the case are stated fully in the opinion of the Court. It was submitted to the Court on printed arguments, by Mr. Storer and Mr. Fox, for the appellant; and by Mr. Chase, for the appellees.

Mr. Justice STORY delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Ohio, in a suit in equity, brought by Longworth, the appellee, against Taylor, the appellant, for a specific performance of a contract for the purchase of land.

The facts, so far as they are important, to be considered upon the present appeal, are as follow: On the 5th of April, 1814, by a sealed contract between the parties, Longworth purchased of Taylor part of a lot in Cincinnati, No. 81, for the price of one hundred and twenty-five dollars per foot in front, whatever measurement it should hold out, one-third payable on signing the contract, one-third in six months, and the remaining third in twelve months. A deed of general warranty was to be given by Taylor, in the course of three months; and a mortgage was to be given on the premises by Longworth, to secure the remaining payments. On the same day, by a written endorsement on the contract, Taylor acknowledged the receipt of the sum of two thousand four hundred and fifty-eight dollars and thirty-three cents, "supposed to be about the first payment." The whole purchase money upon the admeasurement of the lot, amounted to seven thousand four hundred and six dollars and twenty-five cents. No deed was executed by Taylor according to the contract, or at any time subsequent: but Longworth was put in immediate possession of the lot. When the second instalment of the purchase money became due, it was not paid; but by an arrangement between the parties, it was postponed upon Longworth's agreeing to pay the same interest annually thereon, as was received for dividends upon stock in the Miami bank, which was nine or ten per cent. This interest was accordingly paid up to near the close of the year 1819; and in the intermediate time Longworth caused four houses to be built, for stores, on the lot, at the cost of about four thousand four hundred and sixty-four dollars. In the year 1819, or the beginning of 1820, Longworth was informed that one Chambers and his wife had a claim on the lot, which was deemed valid by the counsel employed to investigate it; and that a suit would be commenced on it. A suit was accordingly commenced in equity, against Taylor, Longworth, and others, in November, 1823, which was not determined until after 1829. In September, 1822, no interest on the purchase money having been paid by Longworth after 1819, Taylor commenced an action of ejectment against Longworth, for the lot; and recovered possession thereof in August, 1824.

In June, 1825, the present bill in equity was brought by Lon-

P 2

worth, for a specific performance of the original contract for the purchase of the lot. In the progress of the cause, several supplementary and amended bills were filed; and after the answers were put in, and the evidence taken, the cause came on to be heard; and the Court being of opinion that one Carneal, a citizen of Ohio, who was assignee of one Canby, a subpurchaser of a part of the lot from Longworth, ought to be made a party to the suit, the cause was directed to stand over: and he was accordingly made a party plaintiff, and came in and submitted to such decree as might be made by the Court on the case, as it then stood between the original parties. The cause was afterwards fully argued, and a decree for a specific performance was pronounced; from which the present appeal has been taken.

Some question has been suggested in respect to the propriety of making Carneal a party at so late a stage of the cause; and of the right of Taylor, in virtue thereof, to insist by way of plea upon his exemption from being sued, except in the District of Kentucky, where he resided. But we do not think that there is any valid objection to the proceedings on this account. By his general appearance to the suit in the prior proceedings, Taylor necessarily waived any objection to the suit founded on his residence in another district; and he became, like every other party properly before a Court of Equity, subject to all the orders of the Court. Whether Carneal, as a sub-purchaser, was an indispensable party under all the circumstances of the case, may admit of doubt; but, as his being made a party in no respect changed the actual posture of the case as to the other parties, he merely submitting to be bound by the proceedings, we see no objection to his joinder in that stage of the cause, which in any degree touches either the propriety or the validity of the decree.

The only substantial question in the cause is, whether, under all the circumstances, the plaintiff, Longworth, is entitled to a specific performance of the contract for the purchase: and upon the fullest consideration we are of opinion that he is, and that the decree is therefore right. We shall now proceed to state, in a brief manner, the grounds upon which we hold this opinion.

In the first place, there is no doubt that time may be of the essence of a contract for the sale of property. It may be made so by the express stipulations of the parties, or it may arise by implication from the very nature of the property, or the avowed objects of the seller or the purchaser. And even when time is not thus either expressly or impliedly of the essence of the contract, if the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part; or if there has, in the intermediate period, been a material change of circumstances, affecting the rights, interests, or obligations of the parties; in all such cases, Courts of Equity will refuse to decree any specific performance, upon the plain ground that it would be inequitable and unjust.

But except under circumstances of this sort, or of an analogous

nature, time is not treated by Courts of Equity as of the essence of the contract: and relief will be decreed to the party who seeks it, if he has not been grossly negligent, and comes within a reasonable time, although he has not complied with the strict terms of the contract. But in all such cases, the Court expects the party to make out a case free from all doubt; and to show that the relief which he asks is, under all the circumstances, equitable.; and to account in a reasonable manner for his delay, and apparent omission of his duty.

It does not seem necessary to cite particular authorities in support of these doctrines, although they are very numerous. It will be sufficient to refer to the cases of Pratt vs. Carroll, 8 Cranch, 471. Pratt vs. Law, 9 Cranch, 456. 493, 494, and Brashier vs Gratz, 6 Wheat. 528; in this Court; and to Seton vs. Slade, 7 Vesey, 265. Halsey vs. Grant, 13 Vesey, 73. Alley, vs. Deschamps, 13 Vesey, 225. Hearn vs. Tenant, 13 Vesey, 289, and Hepwill vs. Knight, 1 Younge and Coll. 415, in England, as affording illustrations in point.

In applying the doctrines above stated to the facts and circumstances of the present case, the first remark that occurs, is, that the first default was on the part of Taylor. By his contract he undertook to make a deed of general warranty of the premises in the course of three months after the date of the contract; the second instalment not being payable until a long time afterwards. He never made any such deed, or offered to make it; and if he had, it is obvious, that instead of his being placed in the situation of a defendant in equity, as he now is, he would have been compelled to be a plaintiff either to enforce a specific performance, or to rescind the contract. Now, the plain import of the words of his contract is, that he will make the deed. The excuse for the omission is, that it was the duty of the other side to prepare and tender a formal deed to him for execution. And authorities are relied on, principally from the English Courts, to show, that in all cases of this sort, the established rule is, that the vendee shall prepare and tender the conveyance. This is certainly the rule in England, founded, doubtless, upon the general understanding and practice among conveyancers, as well as upon the peculiar circumstances attendant upon conveyances in that country. The same rule does not seem to have been adopted generally in America, although it may be adopted in some states. In Ohio, the rule is stated by the learned judge who decided the present case, not to prevail; and the local practice, in a case of this sort, ought certainly to constitute the proper guide in the interpretation of the terms of the contract. But waiving this consideration, let us proceed to others presented by the case.

Up to the close of the year 1819, there is no pretence to say that there had been any violation of the contract on the part of Longworth; and no step whatever was taken by Taylor, until he brought the ejectment in 1822, to enforce the contract. That ejectment he asserts in his answer to have been brought in order to compel

Longworth to complete the contract, or to put an end to it. In the mean time, Longworth had been left in the possession of the premises under the contract, had made improvements upon them, and had received the rents and profits with the acquiescence of Taylor. Under such circumstances, where there had been a part performance, and large expenditures on one side, under the contract, and acquiescence on the other side; it would be incompatible with established doctrines, to hold that one party could, at his own election, by a suit at law, put an end to the contract. It could be rescinded by Taylor only, by the decree of the Court of Equity; which decree would, of course, require full equity to be done to the other party, under all the circumstances. Pending the ejectment, Longworth made several propositions for payment, varying from the original conditions, all of which were declined by Taylor; although it seems that Longworth supposed that some of them would have been satisfactory. The recovery in the ejectment was, of course, successful, as the legal title was in Taylor; and the equities of Longworth could not be matters of defence to that suit.

The present bill was brought in the succeeding year; and the question is, whether, under all the circumstances of the case, Longworth is now entitled to a specific performance of the contract, upon his paying all the arrears of the purchase money. Undoubtedly, if there were no grounds of excuse shown accounting for the delay on his part to fulfil the contract, between September, 1822, when the ejectment was brought, and June, 1825, when the present bill was filed; there might be strong reason to contend that he was not entitled to a specific performance of the contract, even if some other relief on account of his improvements might be deemed equitable. But in point of fact, the adverse claim of Chambers and wife to the property, was made known as early as the year 1820; and was asserted by counsel, who were consulted on that occasion, to be valid. The claim was prosecuted (as has been already stated) by a suit in equity, brought in 1823, against Taylor, Longworth, and others; and remained undecided until the close of the year, 1829. There is no pretence to say, that this claim was not bona fide asserted, or that Longworth brought it forward to cover his own default. While it was known and pending, there is as little pretence to say, that Longworth could be compelled to complete the contract on his side; or that he had not a right to lie by, and await the decision of the title, which thus hung, as a cloud, upon that of Taylor. It is one thing to say, that he might waive the objection, and require a conveyance on the part of Taylor; and quite another thing to say, that he was compellable, at once, to elect at his peril, either to proceed on the contract, or to surrender it. There is no ground to assert that from the commencement of the present suit, Longworth has not always been ready and willing to pay up the arrears of the purchase money, and to complete the contract. The proofs in the case are entirely satisfactory on this head. In our opinion,

[Taylor *vs.* Longworth et al.]

the lapse of time is fairly accounted for by the state of the title; and therefore, Longworth has not been guilty of any delay, which is unreasonable or inexcusable.

There is another view of this subject, which seems equally decisive of the merits of this controversy. If the contract had been strictly performed on the part of Taylor, by a conveyance, he would now have stood in the mere character of a mortgagee; for in that event Longworth stipulated to give him a mortgage for the security of the unpaid purchase money. Now, in the view of a Court of Equity, that may well be deemed the true posture of this case; upon the known principle, that equity will, for the purposes of justice, treat that to have been done, which ought to have been done. As mortgagee, which would be his character according to the real intention of both parties, Taylor could have no right to complain of the lapse of time; and could have no claim to the improvements made by Longworth, except as security for his debt. In this view of the matter it is wholly unimportant for us to consider whether the amount of the rents and profits received by Longworth, was equal to, or a set off to his expenditures and improvements, as affirmed in the answer.

Upon the whole, we are entirely satisfied with the decree of the Circuit Court, and it is affirmed, with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Ohio, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this Court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.